All right. Our final case for today is United States against Edward Woodfork. And we'll begin with Mr. Hillis. Good morning. May it please the court, counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I represent Mr. Woodfork. He is raising a suppression challenge in this case, and it's based on two separate things. One, the district court erred by not having Frank's hearing. And then secondly, the evidence in this case was insufficient to establish probable cause such that the Leon good faith exception can be applied here. Begin with the Frank's hearing. There were two problems that necessitated Frank's hearing. One's an omission and one is a misdescription of the address that was later searched. So in the Central District of Illinois, the police apparently are not providing the warrant issuing judges with criminal history of the confidential sources. And of course, under Glover and other case law, that is something that a reasonably well-trained officer is required to do because it bears on the witness's credibility and affects the probable cause determination by the judge. Mr. Hillis, we said in United States v. Clark that a Frank's hearing is not required every time some substantial adverse information about an informant's credibility is omitted from a probable cause affidavit. And here specifically, there was more than just the officer saying, I'm relying on a reliable confidential informant. All of this was going on over the wire. And so the officer was able to listen to it in real time and hear what was going on. So why isn't that enough under the Frank's fairly high standard of intentionally or recklessly disregarding the truth sufficient? Sure. Well, we are uncertain that the officer did hear those things. It is not something that the audio was- I don't think that's true. That's what he testified to. He said it was on the wire and he was there. I believe he said it was on the wire, but I don't recall specifically that he said that he was there beginning to end to listen to all of the audio, Judge. But in any event, even if he did listen to what the information was that was provided to the warrant issuing judge, we have great problems still with the reliability, et cetera. And of course, his own credibility in asserting that or anything else is now a problem. Why would the mere fact that the drug transaction was audio recorded be sufficient to make it reliable? Well, we'd have to know what was recorded and what was said. So if we have an unreliable CS or the officer himself is now under a cloud because his testimony is not especially reliable in asserting these things, those are things that necessitate a Frank's hearing. So for instance, the officer's credibility is one part of this, but then we're relying on the CS. We don't know anything about the CS's reliability. Mr. Hills, I'm sorry to interrupt. Did Mr. Wood Fork's counsel have the audio recordings or transcripts of the audio recordings? Never provided. None of that was provided in the context of- It wasn't offered at the state hearing and it's not in the record for the federal proceeding. So I don't believe that there's any audio- I assume it was provided in discovery in advance or we'd be hearing about it. It would be. We would be hearing about it had it been provided in the discovery. No, I assume it wasn't. I assume it was or you would be telling us this discovery wasn't turned over. Right. We have no record of any audio, Judge. We just have the officer's recap of what it says and, of course, the officer's reliability is at issue. So our ability to rely on what you said is now in doubt. These things go to the totality of the circumstances under Gates. And so Clark said that this needs now to be an issue for the district court to sort out. Clark remanded for a hearing. I don't see the appreciable difference between these two things. There should have at least been a hearing because of this. But why-I mean, because we don't have an absolute rule about needing a Franks hearing every time there's one of these problems, it seems to me this is one of those issues that a state judge wouldn't be shocked to think that a CS or CS1 and CS2 had a criminal record. Now, you're right. We don't know if they were drug dealers, if they were murderers, if they were bank robbers, whatever they may have been. But the state judge could well have wanted to probe that. But the way the CS was being used might have made him think it was unnecessary. Perhaps, had it been stated on the record what those determinations were and why we would know more and we wouldn't be left to speculate, Judge. But we do know this about the CS. For the assertive controlled buys, we don't know that any of those were done correctly under Sidwell or those cases. We don't have any field testing to confirm that the suspected methamphetamine was, in fact, a controlled substance. We don't have any testimony that the witness, the CI, was ever at Mr. Woodfork's residence. So all of these things, Judge Saney in particular, would go to whether or not there's reliable information such that the violation of Franks can now be overcome because this does not have any effect on the overall outcome. There's still probable cause. But what goes to the intentionality of it? Again, for putting aside the probable cause, which some of your arguments may go to, what goes to the intentionality or reckless disregard of the truth on the part of the officer that would trigger the Franks hearing? That's a pretty high standard. It's not especially high. A reasonably well-trained officer would know under Kurth. We have said it's a pretty high standard in order to get a Franks hearing. And yet, when the information is not included, and under Kurth and Clark, in those cases, says that a reasonably well-trained officer would, as a matter of circuit law, know to disclose this, that that has been sufficient by itself to establish recklessness in those cases. And I would argue intentionality. It wasn't in Clark. Clark discussed recklessness, Judge. But I don't think Clark held that that alone is sufficient to establish reckless. It is an inference that can be drawn, and it should have been drawn in this case, or at the very least, there should have been a hearing now because it was squarely at play. I want to go back to the actual hearing that was held before the issuing judge, which is really the focus of your attack anyway. And there are questions posed to Officer Crawley. And you place great weight on the fact that, where is it, where he says at the bottom of page 4, the top of page 5, or Appendix 17, Appendix 18, Mr. Woodfork advised the CS to come to Franklin and English to purchase the methamphetamine, which we know to be 1220 North Franklin Street, which is actually about a block and two houses further away. And if that were the only thing in this transcript, it seems to me you might have a point. But by the time you get to the back of the transcript, you know that the state judge is perfectly aware that, you know, Mr. Woodfork wanted the CS to come to his house. And the judge says, the judge repeats the address of the house. And the judge is very specific in saying there's probable cause for the search of 1220 North Franklin. I don't think the judge was misled at all by this sort of vague geographic reference. Just like you might say, you know, the courthouse is near Dearborn and Monroe. Well, we're a block away. But if somebody is trying to find us, that would get you pretty close. Yeah. The importance of that, it does not fit as neatly into Frank's. But certainly to describe a street corner where a transaction was to occur, and instead ask for the search warrant of a residence where there's no testimony that any CS has ever been there, observed any drug quantities sufficient to say that there's drug trafficking and likelihood of evidence to be discovered there upon issuance and search. Those are genuine problems. Well, the second CS, the one who backs out of the deal, you know, as the officer testifies, Mr. Woodfork wanted this CS to come to Mr. Woodfork's house due, misspelled, to concerns of retaliation and things like that. The CS didn't want to go. But the house is being discussed, you know, the notion that Mr. Woodfork may be using it as a base. If there had been surveillance there under Yarbrough and cases that show that there is a quantity that is being transacted, brought from one place to another, if a witness had actually been in there a la Owens or McNeil, I would think the court could feel much more confident. Those things are glaring omissions in this record. And with that, I was able to answer. It might make the court more confident. But again, we're talking about intentional or reckless disregard. Judge, my my remark in that last bit was going to whether or not there's probable cause. And under Owens and McNeil, I would say there's not. Owens is, of course, the case that deals with application of good faith. OK, I'll let you save the rest and we'll turn to Mr. Simpson. Good afternoon, Your Honors. Thank you. May it please the court. I'm Scott Simpson on behalf of the United States. I'd like to address first the question that was asked, I believe, by Judge St. Eve about whether the defense had the recording of the of the recorded drug drug transaction. I don't know that specifically of myself. I do notice that on the docket, the defense filed a motion to possess electronic discovery. That's record number 15 in the district court's docket. And the district court granted that to that motion. That's docket number 16. I'm sorry, docket number 17. It's unclear exactly what that was. That was kind of a general request. Correct. I would think this has been turned over, though, if it's a defendant on it making statements. It's certainly required to be turned over. I would think so, Your Honor. As I think we've already referred to, Your Honors, we owe great deference to the probable cause finding made by the state judge who issued this warrant. So I think we need to step back for a moment and look at what the state judge was seeing here. This is not a case where the judge was presented just with a written affidavit and had to take it or leave it, so to speak. Rather, the state judge had the police officer testifying in front of him face to face. So the judge could assess the officer's credibility and ask whatever questions he thought were needed to assess probable cause. The officer knew beforehand that the judge would be able to ask him questions, and the judge did ask questions. So the judge could determine, under the circumstances at the time, what additional information would be material. The officer testified that Mr. Woodford had sold drugs to an informant earlier that very day and that he'd agreed to sell drugs to another informant the same day. So it was clear that Woodford was dealing drugs at the time. And that was a controlled drug buy, monitored by wire. So the law enforcement officers could hear the transaction, and they didn't have to rely on what the informant told them had happened after the facts. If I could respond to some of the things that the defense responds in relation to those main facts, they basically try to poke a few holes in this structure, but the structure we submit still stands. First of all, in relation to the confusion about Woodford's location, the officer initially made that comment about the intersection of Franklin and English about a block away from Woodford's house. But the defense is blowing that out of proportion. Almost immediately, the officer corrected that confusion in response to questioning from the judge. So the officer was clearly testifying that the target location for the warrant was Woodford's residence. Next, in relation to the informant's criminal history, Woodford says their criminal history- Before you go on, Mr. Simpson, the testimony on the precise location for the search, which is what the probable cause has to show, there wasn't a ton of evidence. It's kind of light that this occurred at this particular location. There wasn't a ton, Your Honor. There can always be more to support probable cause, but we submit that in this case, it's sufficient for probable cause. What in particular? It's not just probable cause that Mr. Woodford was dealing drugs. It has to be probable cause that they're going to find evidence of the trafficking at the location. Correct. The evidence about the location is a bit light. So what's the best evidence before this court in the officer's testimony that links the drug dealing to that location? Two things, Your Honor. One of the defense's briefs, I forget whether it's their opening brief or their reply, admits that Mr. Woodford was at least an overnight guest at this location, 1220 North Franklin. And to quote what the officer said in response to questioning by the state court judge, he says, this is page seven of the transcript, line 13. The officer says, quote, Mr. Woodford wanted this CS to come to Mr. Woodford's house due to concerns of retaliation and things like that. This CS did not want to go to Mr. Woodford's house, indicating that he had the drugs at his house. And then the judge asks, quote, and so Woodford was directing that second CS to the 2012 North Franklin. And the officer answers, that's correct. You said 2012, he meant 1220? I'm sorry, 1220, yes. And your first point that you started with, the fact that he was an overnight guest at this location, that wasn't before the court, was it? I know that's in the record, but in terms of what the state court knew, I didn't think that particular fact was before the judge. Correct. I don't believe that's in the transcript before the state court judge. Again, the defense states it, admits it in one of their briefs on appeal here. We can only look at what the state court judge had in front of him to assess the validity of the warrant. That's correct. That's correct, Your Honor. So it's really the statements about the CS wanting to go to his house and the officer saying that the intersection was known as 1220, as the residence. And even more, Your Honor, that page seven, a couple of pages later in the transcript where the judge says, and so Woodford was directing that the second CS go to 1220 North Franklin, and the officer answers yes. So on the criminal history, Mr. Woodford says that the criminal history wasn't presented to the state court judge, and that's correct. But the officer testified that the police had used both of those informants previously, and it found them to be reliable. Perhaps the most important, one of the most salient facts here, Your Honor, is that the first buy was a controlled buy, monitored by wire. So the officers didn't have to rely on the informant to describe the transaction accurately afterwards. This isn't the kind of situation where someone just comes to the police and say, hey, I know that someone has drugs at their house. They actually knew, they actually heard that Mr. Woodford had sold drugs to the informant. And as one member of the panel, I believe it was Judge St. Eve, pointed out, the judge could have assumed that the informants had some criminal history. And he could have asked about that if he had felt it was material. The judge here, the issuing judge, is in the best position to know whether that information was needed to assess probable cause. It's the totality of the circumstances. So let me ask you this. Mr. Hillis didn't mention Leon in his opening argument, but it's in the briefs. And he argues in the briefs that this was so egregiously thin and unsatisfactory that even Leon doesn't save it. So you might address that for a second. Certainly, Your Honor. Thank you. And obviously, even, you know, I started out by saying we need to defer to the state judge's assessment of probable cause. Even if we're not going to defer to the state judge's conclusion, I really can't imagine concluding that the state officers acted in bad faith here at Premier Long on this warrant. Especially where, most importantly, especially where the officer testified in front of the state judge. And the judge could ask all the questions that he thought necessary. And the officer knew that he could ask all the questions he thought necessary. It seems to me it would be extraordinary to find that the officers acted in bad faith in relying on a warrant issued by that judge. Just a few more comments, if I could, on the Frank's issue. I think a lot of what we've already talked about applies to Mr. Woodford's request for Frank's hearing. To secure Frank's hearing, the defendant has to show that the officer intended to mislead the judge who issued the warrant. And there's absolutely no evidence of that here. The officer testified face to face. He answered all the judge's questions truthfully. Mr. Woodford's reply, I don't think we've mentioned these two decisions yet this morning, this afternoon. Mr. Woodford's reply cites two decisions. Glover, which I think was mentioned in the Kurth case, K-O-E-R-T-H, for the proposition that an officer has to present a C.S. as criminal history and seeking a warrant. But both of those cases involve reliance on written warrants, not live testimony. And I believe both of them also, I believe neither of them involved situations where there were controlled buys. I believe both of those cases were situations where an informant was simply saying, I'm aware, I believe there are drugs at this person's, this defendant's house. So, your honors, we urge the court to affirm the denial of the motion to suppress. Thank you. All right, thank you, Mr. Simpson. Anything further, Mr. Hillis? Yes, your honor, please. If these were valid controlled buys that we had proof of that in the core operation, then we could feel better. That's not what happened. And this is not a case about what the judge could have asked and what could have been answered. It's about what's in the record. And the record does not show there are drugs, pardon me, in the house. And so, this is a materially significant feature of the case relative to Owens. Because in Owens, there was proof of a drug transaction that occurred at the place to be searched. And there was then a finding that there was enough evidence. Here, there's no drug transaction that occurs at the residence and nothing to suggest there's a drug trafficking amount that's there. And also, if the two people go to meet at a place, that doesn't mean that's where the transaction is going to occur such that drugs can be found there. They could be rendezvousing then at that place and going to another, the place where the drugs are stored. That is not uncommon. That's why this is not enough to say they both agreed to go meet at the residence. The residence has no indicia in it, or rather, there's no facts in the record to show that there are drugs to be found at that residence where the two people meet regardless. All right. Thank you very much. Thanks to both counsel. The court will take this case under advisement and we will stand in recess. Thank you. Thank you.